UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA          CRIMINAL ACTION NO. 23-00237-01

VERSUS                            JUDGE S. MAURICE HICKS, JR.

CORTEZ D. PORTER                  MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is Defendant Cortez D. Porter's ("Porter") Motion to Dismiss the Indictment. See Record Document 18. Porter moves to dismiss the Indictment, wherein he is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), on two grounds: (1) Section 922(g)(1) violates the Second Amendment; and (2) Section 922(g)(1)'s prohibition against felons possessing firearms and ammunition is not supported by any enumerated power granted to Congress and lies beyond the reach of the Commerce Clause. The United States of America ("the Government") filed an opposition to the motion. See Record Document 20. After careful consideration of the parties' submissions, and the law applicable before the Court, Porter's Motion to Dismiss the Indictment (Record Document 18) is **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 27, 2023, a federal grand jury returned two one-count indictments against Porter.[1] Each indictment charged Porter with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). See Record Document 1 in each case. Specifically, in this matter, Count One of the Indictment reads:

---

[1] The other case is United States of America v. Cortez D. Porter, 5:23-CR-00238.

> On or about March 10, 2019, in the Western District of Louisiana, the defendant, Cortez D. Porter, knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in or affecting commerce a firearm and ammunition, to wit: Glock, Model: 19 Gen 4, Caliber: 9x19mm, pistol, and ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

Record Document 1 at 1.

In his Motion to Dismiss the Indictment, Porter specifically challenges the validity of Section 922(g)(1) as it purportedly "violates the Second Amendment's guarantee-of 'the right of the people to keep and bear arms.'" Record Document 18 at 1. Section 922(g)(1) states:

> (g)  It shall be unlawful for any person—
>
> (1)  who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). Porter argues that, under recent Supreme Court precedent in New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111 (2022), Section 922(g)(1) is unconstitutional as applied to him. See Record Document 18 at 2-6. He also argues that Section 922(g)(1)'s prohibition against felons possessing firearms is not supported by any enumerated power granted to Congress in the Constitution and lies beyond the reach of the Commerce Clause. See id. at 2.

In response, the Government argues that Bruen did not call into question felon-dispossession statutes and is therefore inapplicable in this case. See Record Document

20 at 3. Further, <u>Bruen</u> concerned firearm regulations aimed at "law abiding citizens" and not a statute, namely Section 922(g)(1), that has elements that limit itself to regulating non-law-abiding citizens. <u>Id.</u> at 3. The Government also argues that even if <u>Bruen</u> applied, Section 922(g)(1) would satisfy its historical tradition test. <u>See id.</u> The Government states that because Porter admits that settled precedent has foreclosed his argument regarding the Commerce Clause element, the Court should deny the motion on that ground as well. <u>See id.</u> at 2, 16.

## LAW AND ANALYSIS

**I.   Law**

The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. However, it is well-established that, ""[l]ike most rights, the right secured by the Second Amendment is not unlimited." <u>District of Columbia v. Heller</u>, 554 U.S. 570, 626 (2008). Thus, under the Supreme Court's most recent guidance in <u>Bruen</u>, courts must engage in a two-step inquiry to determine whether a regulation placing restrictions on a party's Second Amendment rights is constitutional. <u>See</u> <u>Bruen</u>, 142 S. Ct. at 2129–30. First, a court must ask whether "the Second Amendment's plain text covers an individual's conduct." <u>Id.</u> If the Second Amendment does cover the individual's conduct, the court then must ask whether "the regulation is consistent with this Nation's historical tradition of firearm regulation." <u>Id.</u> Only where the regulation is "consistent with the Second Amendment's text and historical understanding" can it pass constitutional muster. <u>Id.</u> at 2131.

3

## II. Analysis

### a. Heller/Bruen Inquiry

Under the first step of the Heller/Bruen inquiry, the Government argues that the Second Amendment's plain text, understood in its historical context, indicates that Congress is not prevented from disarming felons like Porter. See Record Document 30 3-5. According to the Government, Bruen concerned firearm regulations aimed at law abiding citizens and not a statute like Section 922(g)(1) whose own elements limit itself to regulating non-law-abiding citizens. See id.

Porter argues that applying Bruen's standard, the plain text of the Second Amendment covers the possession of a firearm that Section 922(g)(1) criminalizes. See Record Document 18 at 3. He argues first that the amendment's term "'[k]eep arms' was simply a common way of referring to possessing arms" at the time of the amendment. Id. (citing Heller, 554 U.S. at 583). Second, he argues that he is one of "the people" under the Second Amendment's plain text. Id. (citing Heller, 554 U.S. at 581) (noting that the Second Amendment right "belongs to all Americans")). Porter contends that because the Second Amendment's plain text covers him as a member of "the people," and the firearm he allegedly possessed was an otherwise lawful pistol, the Second Amendment "presumptively protects" his possession of the firearm in this case. Id.

In both Heller and Bruen, the Supreme Court included the qualifier "law-abiding" when discussing those people who are facially protected by the Second Amendment. See Heller, 554 U.S. at 635 (holding the Second Amendment confers the "right of **law-abiding**, responsible citizens to use arms in defense of hearth and home") (emphasis added); Bruen, 142 S. Ct. at 2134 (emphasizing that the petitioners were "two ordinary,

4

**law-abiding**, adult citizens" protected as "people" under the Second Amendment) (emphasis added). The Heller Court apparently used this limitation to ensure that its holding would not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." Heller, 554 U.S. at 626–27. Thus, this Court is of the opinion that Porter, as someone who has three prior felony convictions and thus who is not "law-abiding," is not facially protected by the Second Amendment.

On the other hand, this Court acknowledges that "there is some debate over the extent to which the Court's 'law-abiding' qualifier constricts the Second Amendment's reach." United States v. Rahimi, 61 F.4th 443, 451 (5th Cir. 2023) *cert. granted*, 143 S. Ct. 2688 (2023). Rahimi did not involve a challenge to Section 922(g)(1). Instead, it considered a challenge to 18 U.S.C. § 922(g)(8), banning the possession of firearms by a person subject to a domestic violence restraining order. See id. In Rahimi, the Court stated that "Bruen clearly 'fundamentally changed' our analysis of laws that implicate the Second Amendment, ... rendering our prior precedent obsolete." Id. at 450-51. The Court went on to perform Bruen's textual and historical inquiry anew and found that Section 922(g)(8) unconstitutionally breaches the Second Amendment right to keep and bear arms. See id.

This Court and other Fifth Circuit district courts in considering the constitutionality of Section 922(g)(1), post-Rahimi, found that because a district court is "not free to overturn" decisions of the Fifth Circuit, "the authority to determine whether the Fifth Circuit's pre-Bruen precedent regarding the constitutionality of Section 922(g)(1) has

5

been overturned by an intervening change in the law lies with the Fifth Circuit alone." United States v. Thompson, 670 F.Supp.3d 381, 386 (E.D. La. 2023) (quoting In re Bonvillian Marine Serv., Inc., 19 F.4th 787, 789 (5th Cir. 2021) and citing its statement that "[w]hether an intervening Supreme Court decision merely illuminates or unequivocally overrules is a judgment call"); see also United States v. Jeffery, No. 21-437, 2023 WL 4629556, at *3 (W.D. Tex. July 19, 2023) ("[Because] this Court is bound by a well-established line of Fifth Circuit precedent on Section 922(g)(1) that does not directly conflict with Bruen, this Court is required to adhere to that precedent until the Fifth Circuit or Supreme Court dictates otherwise"); United States v. Hale, No. 22-131, 2023 WL 3866865, at *1 (E.D. La. June 6, 2023) ("Neither Bruen nor Heller changed prior case law prohibiting non-law-abiding citizens from the right to bear arms"); United States v. French, No. 23-64-01, 2023 WL 7365232 at *3 (W.D. La. Nov. 7, 2023) (quoting Thompson, 670 F.Supp.3d at 386, 2023 WL 3159617 at *4).

Another district court stated that although Rahimi briefly touched on the "obsolescence" of prior precedent, the Court may have referred to fundamental changes in its "analysis of laws that implicate the Second Amendment," not prior holdings. United States v. Schnur, 23-65, 2023 WL 4881383 at *3 (S.D. Miss. July 31, 2023). The Schnur Court stated it was convinced that it remains guided by the Fifth Circuit's treatment of Section 922(g)(1). See id. at *4.

Further, the Fifth Circuit recently held that the defendant did not establish plain error in his claim that Section 922(g)(1) violated the Second Amendment. See United States v. Washington, No. 22-10574, 2023 WL 5275013, at *1 (5th Cir. Aug. 16, 2023). The Court stated that it had yet to address the constitutionality of Section 922(g)(1),

reasoning that Rahimi suggests that Bruen's logic may not extend to Section 922(g)(1) as Bruen refers to "law-abiding" citizens in discussing the Second Amendment's scope. Id.; see also United States v. Jones, 88 F.4th 571, 574 (5th Cir. 2023) ("Given the absence of binding precedent holding that § 922(g)(1) is unconstitutional, and that it is unclear that Bruen dictates such result, we have rejected plain-error challenges to § 922(g)(1) under Bruen in several unpublished opinions" collecting Fifth Circuit cases upholding Section 922(g)(1) post-Bruen); United States v. Fulwiler, No. 23-30152, 2023 WL 7118748 at *1 (5th Cir. Oct. 27, 2023) (same); United States v. Forbito, No. 22-11026, 2023 WL 8274528 at *8 (5th Cir. Nov. 30, 2023) (same); United States v. Cuevas, No. 23-60294, 2024 WL 303255 at *2 (5th Cir. Jan. 26, 2024) (stating that the Fifth Circuit extended Bruen to a preserved Second Amendment challenge to Section 922(g)(8), however neither Bruen nor Rahimi dictates such a result for Section 922(g)(1), and this lack of binding authority is dispositive). This Court agrees with the conclusion in Schnur and the conclusion of the Fifth Circuit that it cannot ignore pre-Bruen Fifth Circuit precedent on the constitutionality of Section 922(g)(1) absent a Fifth Circuit or Supreme Court decision reaching the issue. See Schnur, 2023 WL 4881383 at *4.

Notwithstanding, this Court will analyze Porter's motion under the second step of the Heller/Bruen analysis in an abundance of caution like other district courts post-Rahimi. Under step two, the Government argues that even if the Second Amendment were to facially protect Porter as a convicted felon, Section 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation. See Record Document 20 at 5-15. This Court agrees and finds that the Government has met its burden of demonstrating that

7

Section 922(g)(1) has analogues in our Nation's history that justify the restriction on the Second Amendment right to bear arms in this case. See id.

Under the second step of the Heller/Bruen analysis, "the Government must point to 'historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation.'" Rahimi, 61 F.4th at 454 (quoting Bruen, 142 S. Ct. at 2131–32). "The Government need not identify a 'historical *twin*'; rather, a 'well-established and representative historical analogue' suffices." Id. (quoting Bruen, 142 S. Ct. at 2133). "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." Bruen, 142 S. Ct. at 2133.

The Government cites to a definition of a felony from 1769 which stated that a felony was "an offence for which occasions a total forfeiture of either lands, or goods, or both, at the common law; and to which capital or other punishment may be superadded, according to the degree of guilt." Record Document 20 at 9 (citing William Blackstone, Commentaries on the Laws of England 95 (1st ed. 1769)). The Government also states that capital punishment and forfeiture of estate were also commonly authorized punishments in the American colonies (and then the states) up to the time of the founding. See id. at 10 (citing Folajtar v. Attorney General, 980 F.3d 897, 904-05 (3d Cir. 2020)). Further, the Government notes that many American jurisdictions up through the end of the 1700s authorized complete forfeiture of a felon's estate. See id. (citing Beth A. Colgan, Reviving the Excessive Fines Clause, 102 Cal. L. Rev. 277, 332 & n.275-276 (2014) (citing statutes)). A law in New York stated that a counterfeiter "shall be guilty of felony, and being thereof convicted, shall forfeit all his or her estate both real and personal to the

8

people of this State, and shall be committed to the bridewell [correction house] of the city of New York for life, and there confined to hard labor." Id. at 11 (citing Laws of the State of New York Passed at the Session of the Legislature (1785–1788) at 2661 (1886)). The Government also cited to cases from other circuits including the Sixth Circuit in Tyler v. Hillsdale County Sheriff's Department which stated that legislatures historically have authority to impose a firearms disability "as a legitimate consequence of a felony conviction." 837 F.3d 678, 708 (6th Cir. 2016) (en banc) (Sutton, J., concurring in most of the judgment). Given this evidence, among more cited within its opposition, the Government argues that Section 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation that felons can be dispossessed of firearms. See Record Document 25 at 15. The Court in Schnur considered similar evidence provided by the Government and found that given the historical support, Section 922(g)(1) passed constitutional muster under Bruen. See Schnur, 2023 WL 4881383 at *7-10.

This Court agrees and finds that Section 922(g)(1) passes constitutional muster under Bruen. Like the Court in Schnur, this Court also notes the virtual unanimity among the district courts in the Fifth Circuit upholding Section 922(g)(1) considering Bruen. See, e.g., Montes v. United States, No. 21-38, 2023 WL 3688015 at *1 (S.D. Tex. May 26, 2023) (collecting cases upholding section 922(g)(1) after Bruen); see also United States v. Gwinn, No. 23-50, 2023 WL 8242711 at *1 (S.D. Miss. Nov. 28, 2023) (quoting Schnur, 2023 WL 4881383 at *10).

Additionally, Porter argues that the *dicta* in Bruen regarding the continuing validity of the statutory prohibition against firearms does not control the outcome of this case and instead Bruen's holding governs. See Record Document 18 at 5-6. The Supreme Court

9

stated in Heller and reiterated in Bruen that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." Heller, 554 U.S. at 626-27. Both Justice Alito and Justice Kavanaugh, who were joined by Chief Justice Roberts, expressed in their concurring opinions their explicit intent to leave undisturbed government regulations prohibiting the possession of firearms by felons. For example, Justice Alito stated: "Our holding decides nothing about who may lawfully possess a firearm ... Nor have we disturbed anything that we said in Heller or McDonald v. Chicago ... about restrictions that may be imposed on the possession or carrying of guns." Bruen, 142 S. Ct. at 2157 (Alito, J., concurring). Justice Kavanaugh's concurring opinion, joined by Chief Justice Roberts, provided additional support for felons in possession of firearms restrictions in the wake of Bruen, stating, "Properly interpreted, the Second Amendment allows a 'variety' of gun regulations," id. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) and quoting Heller's statement that "[n]othing in our opinion should be taken to cast doubt on 'longstanding prohibitions on the possession of firearms by felons.'" Id. (quoting Heller, 554 U.S. at 626-27, 128 S.Ct. 2783). The dissent also viewed the majority opinion statements in the same way. Justice Breyer, joined by Justice Sotomayor and Justice Kagan, stated, "I understand the Court's opinion today to cast no doubt on" Heller's treatment of laws prohibiting firearm possession by felons. Id. at 2189 (Breyer, J., joined by Sotomayor, J., and Kagan, J., dissenting).

Lower courts "are generally bound by Supreme Court *dicta*," particularly when the *dicta* are "recent and detailed." Hollis v. Lynch, 827 F.3d 436, 448 (5th Cir. 2016); see also United States v. Becton, 632 F.2d 1294, 1296 n. 3 (5th Cir. 1980) ("We are not bound by *dicta*, even of our own court ... *Dicta* of the Supreme Court are, of course, another

10

matter."). Thus, because <u>Bruen</u> is binding precedent, and even if this language is characterized as *dicta*, at a bare minimum, it is entitled to great weight. <u>See</u> <u>Schnur</u>, 2023 WL 4881383 at n.6.

Thus, Porter's Motion to Dismiss the Indictment is **DENIED** under the <u>Heller</u>/<u>Bruen</u> analysis.

### b. Commerce Clause Element

Porter also asserts that Section 922(g)(1)'s prohibitions are not supported by any enumerated power granted to Congress in the Constitution and lie beyond the reach of the commerce clause. <u>See</u> Record Document 18 at 6-8. Porter concedes that this claim is foreclosed but brought it to preserve it for further review. <u>See id.</u> at 8. The Government asserts that this Court should reject Porter's argument because it is in contravention to well settled law. <u>See</u> Record Document 20 at 2, 16. The Court agrees, as the Fifth Circuit and other circuit courts have consistently upheld Section 922(g)(1)'s constitutionality as a proper exercise of Congress's commerce power. <u>See</u> <u>United States v. Mason</u>, No. 23-36, 2023 WL 2589395 at *1 (N.D. Tex. Mar. 21, 2023) (citing <u>United States v. Alcantar</u>, 733 F.3d 143 (5th Cir. 2013); <u>United States v. Daugherty</u>, 264 F.3d 513, 518 (5th Cir. 2001) (collecting cases holding that § 922(g)(1) is a valid exercise of the commerce power); <u>United States v. Carrasco</u>, No. 22-11229, 2024 WL 244934 at *1 (5th Cir. Jan. 23, 2024) ("We have consistently upheld the constitutionality of Section 922(g) as 'a valid exercise of Congress's authority under the Commerce Clause'"); <u>United States v. Gateward</u>, 84 F.3d 670, 672 (3d Cir. 1996) ("We therefore join eight courts of appeal upholding the constitutionality of § 922(g)(1) as a valid exercise of the commerce

11

power."). Thus, Porter's Motion to Dismiss Count 3 of the Indictment is likewise **DENIED** as to his second basis.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Porter's Motion to Dismiss the Indictment (Record Document 18) is **DENIED**.

An order consistent with the terms of this ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this the 16th day of May, 2024.

_____
United States District Judge